Schaefer, Adm'r, etc. vs. Osterbrink and another.

SCHAEFER, Administrator, etc., Respondent, vs. OSTERBRINK and another, Appellants.

*November 27 — December 14, 1886.*

NEGLIGENCE: AGENCY: PARENT AND CHILD. *(1) Negligent driving: Evidence: Disposition and habits of team. (2) Wilful misconduct of agent: Liability of principal. (3) Law of the road. (4–6) Liability of parent for torts of child: Presumption of agency: Evidence. (7) Instructions to jury: Degrees of negligence.*

1. In an action for injuries caused by the negligent or reckless driving of defendant's team past that of the plaintiff on the highway, the plaintiff may show the disposition of defendant's team as to racing, that it had been trained to pass other teams with great speed, and that it had acted in that way both before and shortly after the accident. *Brennan v. Friendship*, 67 Wis. 223, distinguished.

2. A master is responsible for the wilful misconduct of his servant when acting in the course of his employment and in the performance of a duty of the master to the person injured, although such duty did not arise out of a contract.

3. Where two teams, each with a sleigh or vehicle, come in close proximity to each other upon a public highway, the driver of each owes a duty to those riding with the other to proceed carefully and with reference to the shifting situation of the other.

4. A father is not responsible for the wrongful conduct of his minor son unless the latter was his servant or agent.

5. The presumption is that a minor child living with his father and using his team and conveyance in and about the business of the father, is acting on his behalf and under his directions.

Schaefer, Adm'r, etc. vs. Osterbrink and another.

6. Evidence showing, among other things, that a minor son was in the habit of driving his father's team to convey members of the family to and from church, in accordance with the custom of the family, with the knowledge and acquiescence of the father and afterwards of an older daughter who, in the father's absence, was left in general charge of his family, business, and property, is *held* sufficient to charge the father with liability for the negligence or wilful misconduct of the son in the management of the team while so driving it.

7. Where, in an action for injuries caused by defendant's negligence, such negligence is charged to have been gross, and the jury are instructed that he is liable if guilty of negligence "as charged," he cannot complain of such instruction because it did not define the degree of negligence which would make him liable.

APPEALS from the Circuit Court for *Marathon* County. The case is thus stated by Mr. Justice CASSODAY:

This action was commenced by Louis Schaefer, a minor, by his guardian, August 15, 1885, against *Everhart Osterbrink* and *Henry Osterbrink* jointly, upon a complaint, alleging, among other things, in effect, that December 25, 1884, while Louis was riding in a sleigh along in the public highway, with his father, the present plaintiff, drawn by a span of small ponies, the defendant *Henry*, son of the defendant *Everhart*, while in the employ of, and acting as the agent and servant of, said *Everhart*, and with his sanction and authority, and within the scope of his authority, drove a span of horses and sleigh belonging to said *Everhart* along said public highway, behind the sleigh in which said Louis was then riding, so carelessly, negligently, and recklessly that the horses and sleigh of the defendants went against said ponies and said sleigh in which said Louis was so riding, with such force as to crowd the ponies out of the road, and cause them to leap from said road, thereby causing said sleigh in which said Louis was then so riding to suddenly tip nearly over, whereby said Louis was thrown from said sleigh to the ground with such force and violence as to fracture, break, mangle, and bruise one of his legs in such a manner

as to necessitate amputation, whereby said Louis was otherwise seriously injured in body and health, to his great damage, etc.

The defendant *Everhart* separately answered by a general denial. The defendant *Henry* separately answered, denying that he was, at the time in question, such agent, servant, or acting under the authority of said *Everhart;* and alleged, in effect, that at the time and place in question the plaintiff, the father of Louis, drove his team up in the rear of *Henry* in a furious and reckless manner, and attempted to run by the defendant's team, and in doing so ran into a ditch and was upset; and if Louis was injured at all thereby it was caused by his own negligence or the negligence of his said father; and further denied everything not admitted.

At the close of the trial the jury returned a special verdict to the effect (1) that the age of Louis at the time of the accident was nineteen years; (2) that the age of *Henry* at that time was about twenty years; (3) that prior to that time *Henry* had been in the habit of driving his father's team to and from church, and elsewhere upon the road, with his father's permission, (4) and was, on the day in question, driving such team in accordance with his previous custom and as his father's servant; (5) that on the day in question, and during *Everhart's* absence (he was at the time absent in Germany), his daughter, Mrs. Edenhofer, was in general charge of *Everhart's* family, farm, and property thereon; (6) that the conduct of *Henry* in attempting to and driving past the Schaefers at the place and in the manner he did, was not reasonably prudent and careful under all the circumstances, (7) but was careless and negligent, (8) and such careless and negligent conduct of *Henry* was the proximate or direct cause of the accident; (9) that Louis's father was not guilty of negligence in driving or managing his team at the time; (11) that Louis was damaged by the accident in the sum of $1,000; (12) that Louis was entitled to.

recover damages from the defendants jointly, (13) but not against *Henry* alone; (14) that they assess Louis's damages at $1,000.

December 8, 1885, judgment was entered, upon the special verdict in favor of Louis, by his guardian, and against both defendants. Louis having subsequently died, and the plaintiff, his father, having been appointed his administrator, the action was, by an order of the court made July 10, 1886, revived and continued in the name of the plaintiff as such administrator. Thereupon the defendants separately appealed from said judgment.

For the appellants there was a brief by *Bardeen, Mylrea & Marchetti*, and oral argument by *Mr. Bardeen*. They contended, *inter alia*, that a master is not liable for the wilful or tortious acts of the servant unless sanctioned or approved by him. *Tifft v. Tifft*, 4 Denio, 175; *M'Manus v. Crickett*, 1 East, 106; *Foster v. Essex Bank*, 17 Mass. 479, 509; *Wright v. Wilcox*, 19 Wend. 343; *Croft v. Alison*, 4 Barn. & Ald. 590; *Mali v. Lord*, 39 N. Y. 381; *Richmond Turnp. Co. v. Vanderbilt*, 1 Hill, 480. The real test of the father's liability in the case is whether the injury was received under such circumstances that the father can be said to have *authorized* the act, or that the injury was committed by the authority of the master expressly conferred or fairly implied from the nature of the employment and the duties incident to it. Wood on Master & Servant, secs. 279, 281; *Cosgrove v. Ogden*, 49 N. Y. 255; *Howe v. Newmarch*, 12 Allen, 49; *Southwick v. Estes*, 7 Cush. 385; *Bard v. Yohn*, 26 Pa. St. 482.

*John Livermore* and *C. F. Eldred*, for the respondent.

CASSODAY, J. 1. Exception was taken to the admission of evidence. It was certainly competent for the plaintiff to prove that prior to the accident *Henry* had been in the habit of driving his team to church and elsewhere, and the

extent and character of the driving, as bearing upon the nature of his service and the scope of his authority from his father. It was also competent to show the disposition of the team as to racing; that prior to the accident it would, when driven up behind another team and turned to go by, shoot ahead like an arrow, and that the team had been trained to go in that way. We see no objection to proving that the team acted the same way a few days after the accident. Here the evidence was substantially of that nature, and most of it related to the conduct of the team prior to the accident. The case is unlike the attempt to prove an individual to be habitually careless or reckless, as in *Brennan v. Friendship, ante,* p. 223; *Whitney v. Gross,* 140 Mass. 232. One of the questions put to a witness, standing alone, might seem at first to come within the objection, but when taken with the balance of his testimony it clearly related to the habits of the team under the training of *Henry,* apparently with the consent of his father, and consequently was admissible, within the rule sanctioned in *Hoverson v. Noker,* 60 Wis. 513.

2. Exception was taken because the court refused to submit to the jury a question as to whether *Henry's* conduct, at the time and place in question, was such as to frighten the plaintiff's team, and, if so, whether such conduct was in that respect wilful; and because the court refused to instruct the jury, in effect, that if such conduct of *Henry* was wilful then the plaintiff could not recover as against *Everhart.* The question of the master's liability for the wilful misconduct of his servant, acting in the course of his employment, was fully discussed and, as we think, settled in *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Bass v. C. & N. W. R. Co.* 42 Wis. 654.

As to whether the master was liable for the wilful misconduct of the servant in such case, it was said in the *Craker Case,* on the part of the court, that "the true dis-

tinction ought to rest, it appears to us, on the condition whether or not the act of the servant be in the course of his employment." True, it was there said, that, "however that may be in general, there can be no doubt of it in those employments in which the agent performs a duty of the principal to third persons, as between such third persons and the principal. Because the principal is responsible for the duty, and if he delegate it to an agent, and the agent fail to perform it, it is immaterial whether the failure be accidental or wilful, in the negligence or in the malice of the agent; the contract of the principal is equally broken in the negligent disregard, or in the malicious violation, of the duty by the agent." Page 669.

It is claimed that no such duty here existed. The mere fact that the conductor's duty to the passenger in that case arose out of the passenger's contract with the master does not confine the principle involved to the breaches of duty created by contract. Thus, in the very recent case of *Annas v. M. & N. R. Co.*, *ante*, p. 46, it was in effect held that a master could not, even by written stipulation, relieve itself from liability for the failure of a duty imposed by law through the gross negligence or wilful misconduct of its servants while acting in the line of their employment, notwithstanding such duty was voluntarily undertaken by the master without compensation. A duty may and often does exist without any contract. Two teams upon a public highway, each with a sleigh or vehicle, coming in close proximity to each other, the driver of each most certainly owes a duty to those riding with the other. That duty is created by law, and requires each driver to proceed with care and circumspection and with reference to the shifting situation of the other. When such driver is a servant acting within the course and scope of his employment, then such duty rests upon the master as well as the servant. *Limpus v. L. G. O. Co.* 32 Law J. Exch. (N. S.), 34. The employer in such

case, being responsible for the performance of such duty by his delegated agency, can no more escape liability for such failure when it occurs through his agent's gross negligence or wilful misconduct, than he can when it is by reason of his agent's want of ordinary care. Such being the law in this state, the refusal to submit or instruct as thus requested was not error, because the jury were expressly charged, in effect, that in no event could they allow Louis any punitory or exemplary damages, nor anything more than compensatory damages. This entirely eliminated from the case the question of wilful misconduct.

3. Exceptions were taken because the court refused to give the following instructions: "If the jury find from the evidence that the defendant *Henry* was not, at the time of the accident, engaged in the business of his father, but was on a business or pleasure trip not connected with his father's business, the plaintiff cannot recover as against the defendant *Everhart*." Again: "A son is not the servant or agent of his father, unless he is engaged in the service of his father and under his authority." It seems to us that the court did, in substance, give such instructions, in these words: "In order to charge the father, the defendant *Everhart*, with the consequences of *Henry's* negligence, it must appear from the evidence satisfactorily to your minds that the *relation* between them *of master and servant existed at the time; that Henry was the servant of his father; and that the negligent acts of Henry were committed in the line of his employment as such servant.*" And again: "It is undisputed that the defendants were at the time father and son, and that the son was a minor. This relation does not of itself render the father liable for the wrongful conduct of the son." Whether *Henry* was at the time the servant of his father and acting within the line of his employment as such servant, was, of course, a question of fact for the jury.

4. Exception was taken because the court charged the jury as follows: "The presumption is that a minor child living with his father and using his team and conveyance in and about the business of such father, is acting on his behalf and upon his directions, until the contrary is made to appear by the evidence. *This fact established*, and the burden to show that his son was not his servant is imposed upon the father." This is very nearly the exact language of Mr. Justice TAYLOR in *Gerhardt v. Swaty*, 57 Wis. 37, and seems to be a sound proposition of law. We do not understand this portion of the charge as a direction to presume that at the time of the accident the son was engaged in his father's business. On the contrary, the court had previously treated the question "as to whether the son was or was not the father's servant at the time of the accident," as counsel do,— "one of the disputed issues in the case," — and accordingly had submitted it to the jury for determination.

True, the court continued: "The driving of the father's team for the purpose of conveying members of the family to and from church, *in accordance with the usual habit or custom of the family, with the knowledge and approval of the father* or without objection by the father, will be regarded as driving the team in and about the business of the father. No contract of hire is necessary to create the relation of master and servant. It is sufficient to create that relation that one charged as servant, whether a son or a person in no way related, is permitted habitually to perform the work— drive the team,— or otherwise to act as a servant of the owner, according to the circumstances of the case, with the knowledge and consent or acquiescence of the latter, or with the knowledge or acquiescence of the agent in general charge of the business or property of the owner, in the absence of the latter." These instructions present the question whether the evidence of such prior habitual service

on the part of *Henry*,—his driving to and from church with his father's team, in accordance with the usual habit or custom of the family,—with the knowledge or acquiescence of the father and then, in his absence, of the older daughter in general charge of the business and property, was sufficient to justify the jury in finding that, at the time and place in question, *Henry* was acting as the servant of his father and in the course of his employment. After a careful examination of all the facts and circumstances disclosed in the record and of the authorities cited by counsel, we are forced to the conclusion that the evidence is sufficient in law to sustain the verdict against the father as well as the son.

In *Bard v. Yohn*, 26 Pa. St. 483, cited, the son was several years past his majority, had a family of his own, and upon the occasion in question took his father's team without permission and was using them exclusively in his own business. Here *Henry* was a minor living with his father, and took his sisters to church as he had for years been accustomed to do with the knowledge of his father. In *Way v. Powers*, 57 Vt. 135, cited, the son was twenty-eight years of age, and the case is otherwise quite similar to the Pennsylvania case. The case of *Maddox v. Brown*, 71 Me. 432, *S. C.* 36 Am. Rep. 336, is more like this, for the son was a minor, but he was not using the horse and carriage in his father's business at the time.

That the jury were justified in this case in finding that the son was at the time acting as the servant of the father and in the course of his employment, see *Hoverson v. Noker*, 60 Wis. 513; *Gerhardt v. Swaty*, 57 Wis. 24; *Mulvehill v. Bates*, 31 Minn. 364; *Evans v. Davidson*, 53 Md. 245.

5. Exception was taken because the court instructed the jury, in effect, that if *Henry* " was guilty of negligent and careless conduct as charged, in what he did on the occasion referred to, and such conduct on his part frightened the

Schaefer team and caused it to run away," and Louis was thereby injured without contributory negligence, then *Henry* was liable. The ground of this exception is that the court did not define the degree of carelessness or negligence that would make *Henry* liable. But the "negligent and careless conduct *as charged*" was really gross, which was especially favorable to *Henry*. Besides, if he desired a more favorable instruction in that regard, it should have been requested. In the absence of such request, there is no ground for urging the exception as error. There seems to be no material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed on both appeals.