CROSSETT, Respondent, vs. GOELZER and another, Appellants.

*May 10—June 6, 1922.*

*Automobiles: Negligence of driver: Liability of owner of automobile: Father and son: Family-purpose doctrine: Question for jury.*

1. In an action for injuries received by plaintiff when defendant's automobile struck the toboggan on which plaintiff was riding and which was being towed by an automobile, the evidence is *held* to support a finding that defendant was negligent and that plaintiff was not negligent.
2. An automobile is not an inherently dangerous instrumentality, and its mere use does not render the owner liable for accidents caused by one handling it who was not at the time of the accident acting for the owner.
3. A father is not liable for the negligent operation of an automobile by his minor son merely because of the relationship existing between them, but liability must be predicated on the principles of agency.

4. Proof that defendant's automobile, at the time it struck plaintiff, was being operated by defendant's son, who had received defendant's consent to make the trip in question, and that the automobile had been purchased for the use of the family and was frequently driven by the son, and at the time of the accident was occupied also by defendant's daughters and their friends, is *held* not to show, as a matter of law, that the son was acting for the father in driving the automobile at the time of the accident, but to require submission of that issue to the jury. [The family-purpose doctrine is not adopted in this state.]

5. Where a son is driving his father's automobile for the son's own purposes, the fact that his sisters were with him does not show that the trip was in furtherance of the father's purposes so as to render the father liable for an accident during the trip. ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Remanded for trial upon a single issue.*

Personal injury. Shortly after 7:30 o'clock in the evening of January 7, 1920, the plaintiff, accompanied by her father, mother, and several of her friends, was on the way to a toboggan slide. They were being taken to the park where the slide was located in the tow of the Dallman automobile. The toboggan, which was quite a large one, fourteen feet six inches long and twenty-two inches wide, with runners or iron cleats along the bottom, was hitched to the rear axle of the Dallman automobile near the left spring. When the Dallman automobile with the toboggan attached had reached a point in the park north of Washington boulevard entrance and distant four or five feet north of a certain street lamp post, the tow-line broke and another tow-line was procured and the toboggan again attached. After the toboggan was so attached there was a space of about seven and one-half or eight feet from the rear axle of the automobile to the front of the toboggan and of about five or six feet between the left rear wheel of the automobile and the front end of the toboggan. The toboggan was so attached that the left side of the toboggan as the

automobile and toboggan moved forward extended a few inches beyond the track of the left wheel of the automobile. The toboggan slide was located in a northeasterly direction from the place where the rope was changed, and the road in the park leading from the latter point to the toboggan slide was a curved driveway running generally north and turning toward the east, the easterly side of the driveway being convex and the westerly side concave. The driveway was thirty feet wide, but snow had been plowed off the road to either side, leaving twenty-five feet in the clear for a driveway and a snowbank on either side about two and one-half feet at and along the curb.

After the rope was changed the Dallman automobile with the toboggan attached proceeded northeasterly on the right side of the driveway and parallel with the curb, hugging the easterly curb, and the toboggan followed in the position heretofore indicated. The plaintiff's father was on the front of the toboggan with his feet on the cushion and his knees against the hood or circle of the toboggan in a half-standing, half-kneeling position, ready to prevent, if necessary, the toboggan sliding underneath or too near the automobile. A Mr. Hinkel was located at the rear of the toboggan, swinging a lighted red lantern.

When the Dallman automobile had proceeded northerly and reached a point about 100 feet north of the place where the rope was changed, and while it, with the toboggan in tow on the east side of the driveway and parallel with and close up to the easterly curb, was traveling at the rate of two or three miles an hour, the defendant *Elton P. Goelzer,* coming from the opposite direction in a Hudson seven-passenger automobile owned by his father, the defendant *Henry Goelzer,* and traveling from twelve to fifteen miles an hour, suddenly turned his automobile to the left as it met the Dallman automobile, cut in across the driveway immediately in the rear of the Dallman automobile and ran into and across the toboggan in a diagonal line, tearing the

toboggan from the Dallman automobile, breaking the rope and carrying the toboggan back in a southeasterly direction, passed over the toboggan and several of its occupants, including the plaintiff, and ran into the snowbank at the east curb so that the left front wheel of the *Goelzer* automobile was imbedded in the snow up to the hub and the right front wheel was at the snowbank along the easterly curb. When the *Goelzer* automobile stopped it stood diagonally across the driveway facing in a southeasterly direction at an angle of about forty-five degrees to the easterly curb.

The jury found the defendant *Elton P. Goelzer* guilty of negligence in the operation and management of his automobile; that such negligence was the proximate cause of plaintiff's injuries, and that neither the plaintiff nor any one on the toboggan nor in the Dallman automobile was guilty of contributory negligence; and assessed the plaintiff's damages at $2,500. There were the usual motions, and judgment was rendered for the plaintiff upon the verdict, from which the defendants appeal.

*J. Elmer Lehr* of Milwaukee, for the appellants.

For the respondent there was a brief by *A. H. Riemer* and *Churchill, Bennett & Churchill*, all of Milwaukee, and oral argument by *W. H. Churchill*.

ROSENBERRY, J. The motions made by the defendants raise two principal questions: First, Was the defendant *Henry Goelzer* liable by reason of his ownership of the automobile driven by his son? and second, Does the evidence support the verdict? It is the claim of the defendants that as the Dallman automobile moved northerly the toboggan was thrown out of its regular line of travel by reason of the curve in the road around which it was traveling, and that just immediately preceding the accident the rope which attached the toboggan to the automobile broke, thus permitting the toboggan to be thrown across the pathway of the

automobile of the defendant; and further claim is made that it was negligence, as a matter of law, to attach a toboggan to the rear of an automobile so that it might become loose and run into the highway in front of approaching automobiles without warning.

From a careful examination of the evidence we are satisfied that the proof is abundant to sustain the findings of the jury in respect to the facts. The claim of the defendants that the toboggan was thrown into the pathway of the oncoming automobile, that is, to the center of the traveled portion of the highway, has but slight support in the evidence and is directly contradicted by those upon the toboggan and in position to observe the facts as they were. There was thus presented a clear jury issue which was found against the contention of the defendants.

The question of whether or not *Henry Goelzer*, the father, is liable under the facts and circumstances of this case is presented by the brief of the defendant *Henry Goelzer*, but not argued. On behalf of the plaintiff it is argued that the so-called family-purpose doctrine should control, and that if such doctrine be applied to the facts in this case the defendant *Henry Goelzer* was clearly liable. The facts are these: *Elton*, the son, at the time of the accident was nearly seventeen years of age and a competent driver. He had driven the automobile, which was owned by his father, a seven-passenger Hudson, twenty-nine horse-power, very frequently, using it to go to school, to take his sisters to and from school, and to take his mother out driving for pleasure and shopping. The family consisted of the father, mother, *Elton*, two younger brothers, one older sister, and one younger sister. The father drove the car at times, usually on Sundays, and the car was used generally for the pleasure, comfort, and convenience of the family. The car was not taken out without the father's permission except as directed by the mother, and the father at all times knew where the car was. On the evening in question *Elton* proposed to take

his sisters and some friends of his and theirs skating. The proposed trip was submitted to the father for his approval and *Elton* had the father's permission to take the car for the purpose of taking his sisters and his and their friends to the skating park. He procured the car from the garage, returned to his home for his sisters, then called for their friends, and then for his cousin. He left these at the skating rink and then went to call for a Miss Giese, who was an employee in his father's office, and, accompanied by Miss Giese and Clarence Schumann, he went some blocks to the home of a cousin to procure from him the skates which his cousin had borrowed the day before but had not returned. The father was not advised of the fact that *Elton* was to go to the home of his cousin for the purpose of procuring his skates, and it was while *Elton* was driving the car on his way to get the skates that the accident happened. The father testified that the car was a family car; that *Elton* drove it with his permission so that the family might have the use of the car and receive entertainment and pleasure thereby. It also appeared that *Elton* used the car to some extent for household errands and shopping; that he at times used it for his own purpose when none of the family were with him.

This particular question not having been before presented to this court will be treated more fully and more in detail than is our customary practice, and as a preliminary to that we desire to call attention to some fundamental principles as exemplified in the decisions of this and other states.

An automobile is not an inherently dangerous instrumentality so that its mere use will render the owner liable for accidents caused by one handling it, although at the time he need not be acting for the owner. *Danforth v. Fisher,* 75 N. H. 111, 71 Atl. 535, 21 L. R. A. n. s. 93; *King v. Smythe,* 140 Tenn. 217, 204 S. W. 296, L. R. A. 1918F, 293.

A minor son living with his father was directed by the

father to take the father's gun to the cornfield and there to shoot crows, for which the son was to receive ten cents apiece. Instead of remaining in the cornfield the son went away from the father's premises hunting other game, and while several miles away, by his carelessness in handling the gun, another person was injured. The father was held not liable therefor, because the son was not at the time of the accident in his father's employ or in any sense the servant of the father for such a purpose. *Winkler v. Fisher,* 95 Wis. 355, 70 N. W. 477. The matter of whether or not the gun was a dangerous instrumentality does not seem to have been discussed, but the decision is placed squarely upon the ground indicated and it is therefore a necessary inference that the father was not liable for placing the gun in the hands of his minor son.

In a case involving liability of the father for the negligent and reckless driving of his team by his minor son, it was held that the father was not responsible for the wrongful conduct of his minor son unless the latter was his servant or agent. In the same case it was held, however, that the presumption is that a minor child living with his father and using his team and conveyance in and about the business of the father is acting on his behalf and under his direction, and it was held that the evidence, showing, among other things, that a minor son was in the habit of driving his father's team to convey members of the family to and from church in accordance with the custom of the family, with the knowledge and acquiescence of the father, and afterwards of an older daughter, who in the father's absence was left in general charge of his family, business, and property, was sufficient to charge the father with liability for the negligence or wilful misconduct of the son in the management of the team while so driving it. *Schaefer v. Osterbrink,* 67 Wis. 495, 30 N. W. 922.

The doctrine of *Schaefer v. Osterbrink, supra,* was af-

firmed in *Kumba v. Gilham,* 103 Wis. 312, 79 N. W. 325 (1899), where it was said:

"The primary question of law here presented is whether the defendant is liable for the acts of his son, assuming them to be negligent. As to this question the facts are without dispute. The law is well settled that no general liability of the father for torts of a minor son exists. Such liability in general results only from the rule of *respondeat superior* when the fact of agency for the father is proved, and no presumption of agency results from the domestic relationship." Citing *Schaefer v. Osterbrink,* 67 Wis. 495, 30 N. W. 922; *Winkler v. Fisher,* 95 Wis. 355, 70 N. W. 477.

Both the *Schaefer* and *Kumba Cases, supra,* are cited in an extensive note on "Liability of a parent for the acts of his children," 74 Am. St. Rep. 801.

In *Hiroux v. Baum,* 137 Wis. 197, 118 N. W. 533, it appeared that a boy seventeen years of age lived with his father, occasionally working in his store. The father purchased an automobile upon the solicitation of the son, and it was understood between the father and son that the son should learn to operate the automobile, teach other members of the family to run it, and run it for their benefit. By an agreement between the father and the man from whom the car was purchased, the latter was to teach the son to operate the car, and while the son was operating it under the direction of the man from whom the car was purchased the injury occurred, and it was held that it was a question for the jury whether or not the son was acting for the father or whether the third person had direction of the automobile as an independent contractor; and it was further held that the fact that the son was running the automobile by the authority of the father was sufficient to make out a *prima facie* case of master and servant.

In *Habhegger v. King,* 149 Wis. 1, 135 N. W. 166, a minor son was operating the father's automobile, and without negligence on the part of the son a third person suffered

severe injuries.  The son undertook to contract for hospital and medical services on behalf of his father.  It was held that the father was not liable, the son having no express authority to contract for such services, and, there being no negligence on the part of the son, employment could not be sustained on the theory that it was necessary in order to reduce the damages.

So far as we have discovered, these are the only Wisconsin cases applicable to the particular question under consideration here.

The family-purpose doctrine has been stated thus:

"This doctrine holds the owner of an automobile, which was purchased and maintained for the pleasure of his or her family, liable for injuries inflicted by the machine while it is being used by members of the family for their own pleasure, on the theory that the car is being used for the purpose or business for which it was kept, and that the person operating it is, therefore, acting as the owner's agent or servant in using it."    5 A. L. R. 226.    See also extensive note.

The argument for the family-purpose doctrine is perhaps as well and forcibly stated by the supreme court of Tennessee as by any court.  After quoting from *Van Blaricom v. Dodgson,* 220 N. Y. 111, 115 N. E. 443, L. R. A. 1917F, 363, the Tennessee court says:

"It seems to us that the foregoing reasoning is more concerned with what the learned court considered pure logic than with the practical administration of the law.  If a father purchases an automobile for the pleasure and entertainment of his family, and, as Dr. Smythe did, gives his adult son, who is a member of his family, permission to use it for pleasure, except when needed by the father, it would seem perfectly clear that the son is in the furtherance of this purpose of the father while driving the car for his own pleasure.  It is immaterial whether this purpose of the father be called his business or not.  The law of agency is not confined to business transactions.  It is true that an automobile is not a dangerous instrumentality, so as to make

the owner liable, as in the case of a wild animal loose on the streets; but as a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and when moving rapidly upon the streets of a populous city it is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument, and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities. An automobile cannot be compared with golf sticks and other small articles bought for the pleasure of the family. They are not used on public highways, and are not of the same nature of automobiles." *King v. Smythe,* 140 Tenn. 217, 204 S. W. 296, L. R. A. 1918F, 293. See, also, note to this case in the same volume, p. 297.

In *Arkin v. Page,* 287 Ill. 420, 123 N. E. 30, 5 A. L. R. 216 (1919), the supreme court of Illinois refused to adopt the family-purpose doctrine. The court said:

"It seems rather a fantastic notion that a son, in using the family automobile to take a ride by himself for pure

pleasure, is the agent of his father in furnishing amusement for himself, is really carrying on his father's business, and that his father, as principal, should be liable for the result of the son's negligent manner of furnishing the entertainment to himself. . . . If the son is his father's agent to amuse himself with an automobile, he must also be a like agent for his own amusement with bicycles, horses and buggies, guns, golf clubs, baseballs and bats, rowboats, and motor and sail boats, if these should happen to be provided, and if, in carrying on his father's business by the use of any of these articles, as his father's agent, to amuse his father's son, he should negligently injure any one, his father would be liable as principal. Such a refinement of reasoning has not been recognized until since the advent of the automobile, or in the case of any other instrumentality."

Cases on both sides of the proposition are quite fully cited, those against the family-purpose doctrine being in the opinion of the court and those sustaining it being cited in a dissenting opinion.

The supreme court of Massachusetts thus stated the rule:

"The principles of law which govern this case are plain. A father is not liable for the torts of his minor son, simply because of paternity. There must exist an authority from the father to the son to do the tortious act, or a subsequent ratification and adoption of it, before responsibility attaches to the parent. This authority may be express or it may arise by implication from all the attendant circumstances. The wrongful act must be performed by the son in pursuance of the business, incident, or undertaking authorized by the father, before the latter can be held liable. Such authority may be found in the actual presence of the parent, in express or implied direction, or in a precedent course of conduct. If the act is within the general scope of authority conferred by the father, or in carrying out the enterprise for which the minor has been commissioned, then the father may be liable even though he had no knowledge of the specific conduct in question and it was contrary to his direction. If the act is not done by the son in furtherance of the father's business, but in performance of some independent design of his own, the father is not liable. The

controlling rules of law are the same whether the business in question concerns the operation of an automobile or any other matter." *Smith v. Jordan,* 211 Mass. 269, 97 N. E. 761.

Upon the matter of the father's liability for the operation of the automobile, the matter is reasoned out in that case by the court thus:

"If the father had employed a chauffeur outside the family at a stated compensation, it could not be contended seriously that taking the wife out for an afternoon call was not the business for which he had been employed. If, instead of hiring a stranger, the father chose to have the same work performed by his minor son, to whose time and services he was entitled as a matter of law, it could not be ruled as matter of law that a jury might not find the business to be that of the father. This is not a case of mere permissive use of the father's vehicle by the son for his own pleasure. Although the father had no knowledge of the particular journey which was taken on the occasion of the accident, his knowledge that on previous occasions the wife had used the car, and his testimony of the purpose for which it was bought, and that it was not customary, when the wife was going on errands with the automobile, to ask his permission, were enough to support a finding that the trip in question was authorized by him. The fact that the son was the only person in the family who could legally operate the car had some tendency in that direction. The relation of husband and wife is such that when the former has purchased an automobile for family use, a ride by the wife in it, with his general permission, is not as matter of law the business of the wife, but may be found to be that of the husband." *Smith v. Jordan,* 211 Mass. 269, 97 N. E. 761. See note in 41 L. R. A. n. s. 775.

The New York court said in rejecting the family-purpose doctrine:

"On its face a proposition seems to be self-contradictory which asserts that a person who is wholly and exclusively engaged in the prosecution of his own concerns is nevertheless engaged as agent in doing something for some one

else. . . . The attempt is made, however, to reconcile these apparently contradictory features of this proposition by the assertion that the father had made it his business to furnish entertainment for the members of his family, and that therefore, when he permitted one of them to use the car, even for the latter's personal and sole pleasure, such one was really carrying out the business of the parent, and the latter thus became a principal and liable for misconduct. This is an advanced proposition in the law of principal and agent, and the question which it presents really resolves itself into the one whether, as a matter of common sense and practical experience, we ought to say that a parent who maintains some article for family use, and occasionally permits a capable son to use it for his individual convenience, ought to be regarded as having undertaken the occupation of entertaining the latter, and to have made him his agent in this business, although the act being done is solely for the benefit of the son. That really is about all there is to the question. Not much can be profitably said by way of amplification or in debate of the query whether such a liability would rest upon reasonable principles, or whether it would present a case of such theoretical and attenuated agency, if any, as would be beyond the recognition of sound principles of law as they are ordinarily applied to that relationship. The question largely carries on its face the answer, whichever way to be made. Unquestionably an affirmative answer has been given by the courts of some states (citing cases). But it seems to us that such a theory is more illusory than substantial, and that it would be far-fetched to hold that a father should become liable as principal every time he permitted a capable child to use for his personal convenience some article primarily kept for family use. . . .

"It seems to us that the present theory is largely due to the thought that because an automobile may be more dangerous when carelessly used than any of the other articles mentioned, there ought to be a larger liability upon the part of the owner, and to this end an extension of the doctrine of principal and agent in order properly to safeguard its use. . . .

"It seems to disclose the idea, as an essential part of the argument, that because an automobile is different than a

horse or boat, some advanced rules ought to be applied to its use. But the rules of principal and agent are not thus to be formulated. They are believed to be constant, and not variable in response to the supposed exigencies of some particular situation. The question whether one person is the agent of another in respect of some transaction is to be determined by the fact that he represents and is acting for him, rather than by the consideration that it will be inconvenient or unjust if he is not held to be his agent. If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter's own business, that liability ought to be sought by legislation as a condition of issuing a license rather than by some new and anomalous slant applied by the courts to the principles of agency." *Van Blaricom v. Dodgson,* 220 N. Y. 111, 115 N. E. 443, L. R. A. 1917F, 363.

We shall not attempt to harmonize and reconcile the decisions of the various courts in this country in support of and in opposition to the family-purpose doctrine. It is quite plain that the principles enunciated by the supreme court of Massachusetts in *Smith v. Jordan,* 211 Mass. 269, 97 N. E. 761, find strong support in the Wisconsin cases referred to.

The father is not liable for damages inflicted by the negligent operation of his automobile by his minor, competent son because of the relationship existing between the owner and the operator, but liability must be predicated upon the same fundamental principles of agency which would govern in the case of the use of any other instrumentality owned by the father and used or operated by the son.

It is to be noted that *Smith v. Jordan,* 211 Mass. 269, 97 N. E. 761, is cited and relied upon as supporting the family-purpose doctrine and also as supporting the opposite conclusion. We agree with the position of the New York court that if the very extensive use of the automobile has created a situation which requires the application to it of a different rule than would apply to other instrumentalities not inher-

ently dangerous, it is a matter for the consideration of the legislature rather than the court.

We come now to the matter of the application of the principles stated to the facts in this case. The circumstances under which the trip in question was undertaken do not seem to be clearly indicated in the testimony. In addition to the facts already stated, it appears that *Elton,* the son, on the evening in question asked his father's permission to take the car to go skating. The trip was apparently suggested by him and not by the father, although the father knew *Elton's* plans for the evening and that he intended to take his sisters as well as his and their friends. Upon the evidence as it stands, we do not think it can be said as a matter of law that the trip was undertaken at the request and for the benefit of the father, neither can it be said as a matter of law that the trip was undertaken solely by *Elton* for his own benefit and to accomplish his own purposes. A jury issue was presented upon this phase of the case.

While the facts are practically undisputed, it cannot be said that the inferences to be drawn therefrom are so plain that the minds of reasonable men cannot come to different conclusions in regard to them. If the son procured permission to take the automobile upon the evening in question for purposes of his own, the mere fact that his sisters accompanied him, while it is a circumstance to be considered, is not conclusive. To hold it conclusive would be in effect to adopt the family-purpose doctrine. The defendants made a timely request that this issue be submitted to the jury by the special verdict. The refusal of the court to submit the issue was erroneous, and the judgment must be reversed for that reason. If it be found by the jury that the trip was undertaken at the request and for the benefit of the father, it is considered that as a matter of law *Elton* was acting within the general scope of his authority in going to the home of his cousin to procure his skates.

The case having been fully tried upon all other issues, it will be remanded for trial upon the single issue as to whether or not the trip in question was undertaken at the request of and for the benefit of the father. The judgment will go according to the determination by the jury of that issue; the defendants to recover costs in this court.

*By the Court.*—It is so ordered.

ESCHWEILER, J. (*dissenting*). It clearly appearing under the facts in this case that the defendant *Henry Goelzer* purchased and kept the automobile for the convenience, comfort, and pleasure of the family; that the son *Elton* was the one who generally drove the car when so used; that the use at this particular time was clearly within the field and purpose for which it was so kept and maintained, the trial court, in my judgment, was correct in holding the defendant *Henry Goelzer,* as a matter of law, liable for the injuries to the plaintiff.

This presents a situation well within the rule now being recognized and upheld in many jurisdictions. *Johnson v. Smith,* 143 Minn. 350, 173 N. W. 675; *Plasch v. Fass,* 144 Minn. 44, 174 N. W. 438, 10 A. L. R. 1446, and note p. 1449; *Landry v. Oversen,* 187 Iowa, 284, 174 N. W. 255. See, also, note in 5 A. L. R. at p. 228; *Baldwin v. Parsons* (Iowa) 186 N. W. 665; Babbitt, Motor Vehicles (2d ed.) § 917; Berry, Automobiles (3d ed.) § 1163.

I think, therefore, the judgment should be affirmed.