ZEIDLER, Respondent, vs. GOELZER, imp., Appellant.

*October 14—December 7, 1926.*

*Automobiles: Use of car for benefit of member of family: When owner is liable: Appeal: Law of the case: Dismissal because of failure to bring cause for trial within year after reversal: Waiver of objection: Interest on verdict: Trial: Instructions: As to express or implied request of owner: Immaterial error.*

1. This court has adhered to the common-law doctrines obtaining in the law of master and servant and in that of principal and agent in regard to the liability of the owner of an automobile when operated by another, be he a stranger or a member of the family; and the family-purpose doctrine has never been adopted in Wisconsin.  pp. 382, 383.

2. When an automobile is operated by a member of the owner's family under circumstances which indicate that it is used solely for the pleasure of the family or a member thereof, liability does not ensue from the mere relation, and no lia-

bility can ensue even though the owner may have consented to such use. p. 383.

3. If the owner of an automobile directs either a stranger or one of his family to operate the car for the benefit of the family, a relationship of master and servant or of principal and agent is created, as the owner makes the business of the operation of the car his own business. p. 383.

4. The evidence in this case is *held* to take to the jury the question whether the father's automobile was taken by the son at the request and for the benefit of the father, where the son took his sisters and some friends to go skating after asking the father's permission. p. 385.

5. Where the appellate court under the facts has determined the law, such law will be the law of the case, right or wrong, upon a retrial, where the evidence is substantially identical with that adduced on the first trial. p. 387.

6. A motion for the dismissal of the case, based upon sec. 274.36, Stats., on the ground that plaintiff did not bring it within one year after reversal upon appeal, was properly overruled where the delay was due to inability to secure the attendance of the judge who presided at the first trial, plaintiff having made repeated efforts to get him and having on several occasions prepared for trial. p. 388.

7. Where during the year intervening between the two trials defendant entered into negotiations looking toward a settlement, after the liability company in which he was insured had gone into the hands of the insurance commissioner for liquidation, he waived his right to object, under sec. 274.36, Stats., to plaintiff's failure to bring the second trial within a year after reversal of the former judgment. p. 388.

8. Interest on a verdict for damages in a personal injury action was properly computed from the date of the verdict in the first trial, where the judgment was reversed and another trial had as to the issue of liability only. p. 389.

9. Where the only issue on the retrial was whether the trip on which the accident occurred was taken at the request and for the benefit of the father, an instruction that an "express request" occurs when one person commands or asks another to do or give something, or answers affirmatively when asked whether another shall do a certain thing, but that an "implied request" may be expressed without saying anything, is *held* proper. p. 390.

10. Unnecessary and inapplicable illustrations in the instructions, if error, are harmless where the jury was in possession of all the facts, since they could readily determine that the situation involved in the improper instruction had no application to the case. p. 391.

APPEAL by the defendant *Henry Goelzer* from a judgment of the circuit court for Milwaukee county: S. E. SMALLEY, Judge. *Affirmed.*

For the appellant there was a brief by *J. Elmer Lehr,* attorney, and *Frank T. Boesel,* of counsel, both of Milwaukee, and oral argument by *Mr. Boesel.*

For the respondent there was a brief by *Albert H. Riemer* and *Churchill, Bennett & Churchill,* all of Milwaukee, and oral argument by *W. H. Churchill.*

DOERFLER, J. The action was brought to recover damages for personal injuries. The judgment entered on a former trial came before this court for review on appeal, and the opinion in such case will be found in 177 Wis. 455, 188 N. W. 627, where the leading facts involved in the case are quite generally stated, and for brevity's sake no further reference will be made to the same excepting in so far as it may be necessary to further elucidate the issue involved herein.

The question of the negligence of the defendant Elton Goelzer and of the contributory negligence of the plaintiff were on the first trial properly submitted by the court to the jury, and were uniformly answered in plaintiff's favor, and were approved by this court, and when the cause was remanded for a retrial, under the express language of the opinion it was limited "upon the single issue as to whether or not the trip in question was undertaken at the request of and for the benefit of the father." In the opinion also it is said:

"The circumstances under which the trip in question was undertaken do not seem to be clearly indicated in the testimony. In addition to the facts already stated, it appears that Elton, the son, on the evening in question *asked his father's permission* to take the car to go skating. The trip was apparently suggested by him and not by the father, although the father knew Elton's plan for the evening and

that he intended to take his sisters as well as *his and their friends.* Upon the evidence as it stands we do not think it can be said as a matter of law that the trip was under-taken at the request and for the benefit of the father, neither can it be said as a matter of law that the trip was undertaken solely by Elton for his own benefit and to accomplish his own purposes. A jury issue was presented upon this phase of the case. . . . The defendants made a timely request that this issue be submitted to the jury by the special verdict. The refusal of the court to submit the issue was erroneous, and the judgment must be reversed for that reason."

It is the earnest contention of counsel for the plaintiff that the testimony on the two trials was in all respects identi-cal, and that if this be so, the jury issue outlined by this court in its former opinion was raised, and was therefore properly submitted by the trial court. To establish the affirmative of the issue the plaintiff called the defendants *Henry Goelzer* and his son upon the stand and examined them adversely. In order to reproduce the testimony sub-stantially identical with that of the first trial upon the sole issue involved, plaintiff's counsel adopted the questions on the first trial and interrogated these witnesses accordingly. It became evident in the course of the examination of these witnesses that slight variations appeared in the answers, and in some instances, apparently owing to the lapse of time, their memories of the facts had become somewhat vague and defective. A proper foundation, however, having been laid, certain material parts of the testimony of these two witnesses taken upon the former trial and upon another trial which involved the same accident were introduced.

The evidence introduced upon the second trial, in a gen-eral way, may be summarized as follows: The defendant *Henry Goelzer,* a married man, engaged in the hardware business in the city of Milwaukee, and having five children, to wit, the defendant Elton, who was the eldest son, and who at the time of the accident was about seventeen years

of age, two younger brothers, one sister older than himself, and one younger, some considerable time prior to the accident purchased a Hudson automobile for the pleasure, comfort, and convenience of his family. Two members of his family were able to operate the car, viz. himself and the son Elton. The former drove the car on Sundays for the purpose for which it was purchased, and during the week, excepting only on such occasions when the father was not engaged in business, the car was driven by Elton. Upon all occasions, according to the undisputed testimony, whenever Elton drove the car it was with the knowledge and permission of the father. Under such circumstances this car had been used by Elton in going to and from school and in conveying his two sisters to school. He had also, under similar circumstances, operated the car in performing household errands. Likewise, on prior occasions, he had used the car to convey his sisters and friends of members of the family to the park and skating rink. He was concededly an efficient and capable driver. The father expressly testified that he wanted Elton to drive the car for the pleasure, entertainment, and comfort of the family, and that this was the case on the evening when the accident occurred, and that he realized that such operation of the car did not only constitute a service to the family but also a service to him. Upon the whole, upon a thorough consideration of the testimony on both trials, it is our view that the same in substance is identical.

In the opinion on the former appeal of this case this court expressly refused to adopt the family-purpose doctrine. The decision in that case was further confirmed in subsequent cases, viz.: *Geffert v. Kayser,* 179 Wis. 571, 192 N. W. 26; *Hopkins v. Droppers,* 184 Wis. 400, 198 N. W. 738; *Papke v. Haerle,* 189 Wis. 156, 207 N. W. 261; *Calumet Auto Co. v. Diny,* 190 Wis. 84, 208 N. W. 927. In

each one of these cases the common law was adhered to that
the liability of an owner of an automobile when operated
by any other person, whether he be a stranger or a mem-
ber of the family, can only be predicated on the principles
obtaining in the law of master and servant and of principal
and agent; that liability results from the doctrine of *respon-
deat superior;* that when an automobile is operated by a
member of the family under circumstances which indicate
that it is used solely for the pleasure of the family or for
any member or members thereof, liability does not ensue
from the mere relationship existing; and that where a
machine is taken out solely for the individual pleasure or
comfort of a member of the family, even though it be with
the consent of the owner, no liability against the owner
can ensue.   In brief, in order that the owner may be held
liable, the operation of the machine must be in further-
ance of his business or of his welfare.

The term "business" as thus used is not confined in its
meaning to an undertaking conducted for money profit.
It may embrace any benefit which may inure to him.   While
no legal obligation devolves upon the head of a family to
furnish a car which affords pleasure and amusement to
the members of his family, and while he is under no obliga-
tion to delegate or direct any one to operate a car for the
benefit of his family, nevertheless, when he directs either
a stranger or a member of his family to operate the car
under such circumstances that the one so placed in charge
may be deemed to perform a service for him, which service
without such direction or delegation he would necessarily
be obliged to perform himself, then there can be no logic
advanced which will lead to the conclusion that a relation-
ship of master and servant or principal and agent is not
created, assuming that from such operation the owner re-
ceives a benefit.   In other words, under such circumstances

the owner makes the business of the operation of the car his own business, as much so as though the operator drove the machine in the business conducted by the owner for profit.

As will appear from the facts stated in the former opinion, the trip taken on the night of the accident was not suggested by the father, but was suggested by the son, Elton. Had the father in express language given directions for this trip, or had he requested it for the purpose of affording amusement and entertainment for his daughters, the son would clearly have been constituted the agent, as much so as if such request or direction had been given to a chauffeur in the regular employ of the father.

The issue in this case, in its final analysis, narrows down to this simple proposition: From all the facts and circumstances in the case as disclosed by the evidence, can it be said that the son undertook this trip upon the father's request; and did the suggestion emanating from the son and indicated to the father, in view of all of the other surrounding facts and circumstances, amount to an implied request on the part of the father to have the machine operated at the time the trip was undertaken, for the father's benefit? The question being of grave importance, we will undertake, at the risk of repetition, to reiterate the salient points in the evidence.

The car was a pleasure car, purchased by the owner for the comfort, entertainment, and pleasure of the members of his family. The father, as the owner, had exclusive right of direction with respect to the use of this car. While at home on Sundays and on other occasions he drove the car himself. No other member of the family had learned to drive the car excepting the eldest son, Elton. The car was used almost daily by the son Elton, with the knowledge and consent of the father, in conveying his two daughters to school. This was clearly a service for the benefit of the

Zeidler v. Goelzer, 191 Wis. 378.

father. He used the car in performing family errands, with the consent of the father, and in such service he was performing the work of the father. The father furthermore wanted the son to use the car for other family purposes, and in this desire which the father testified to, he realized that the son was performing a service for the father's benefit. This was so with respect to the trip undertaken on the night of the accident, as was testified to by the father. Under these circumstances, under the decision on the former appeal, the facts raised a jury issue, and the jury having decided the question submitted in favor of the plaintiff, under the very wording in the opinion, judgment should go in plaintiff's favor.

In the *Papke Case, supra,* the trip was undertaken with the permission of the father, solely for the benefit of the daughter, and it was there held that the relationship of master and servant was not created. Such was also the holding in the *Geffert Case, supra,* and the doctrine pronounced in these cases was also affirmed in the case of *Calumet Auto Co. v. Diny,* 190 Wis. 84, 208 N. W. 927, and *Hopkins v. Droppers,* 184 Wis. 400, 198 N. W. 738. In holding as this court did in the cases aforesaid, its decision harmonizes with the numerous cases which are cited and appear in a note in the case of *Arkin v. Page* (287 Ill. 420, 123 N. E. 30), reported in 5 A. L. R. 216, the particular note containing the citations referred to appearing on page 230. The logic in the cases thus cited in A. L. R. is persuasive of our holding, and a reading of these cases convinces us that the reasoning is in accordance with a progressive tendency in that direction. The same may be said of the case of *Watkins v. Clark* (1918), 103 Kan. 629, 176 Pac. 131. Among other things it is there said:

"The purchase of the automobile by the defendant for the use of his family, including his daughter, operated as a gift to them of the right to use it. When using it to

accomplish his purposes, whether business or pleasure, they represent him, but when they exercise their privilege and use it to accomplish their own distinct purposes, whether business or pleasure, they act for themselves, and are alone responsible for their negligent conduct. The fact that the automobile was purchased for use by the owner's family did not make him generally responsible for its subsequent operation, and because the car was subject to appropriation by the members of his family for their own use there was no presumption that any particular trip was made in his behalf. The use made of the car on any particular occasion is a question of fact, to be determined by evidence showing the fact, and in this instance there was no evidence that any-body was concerned except the daughter. The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse this view had to be abandoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result an adaptation of the law of master and servant and principal and agent was resorted to to explain the liability. . . . As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was his by representation. . . . The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society but for the courts."

The doctrine of liability based on *respondeat superior* has been so firmly intrenched in the common law that if it is to be modified in any respect, as is said in the former opinion in this case, it should devolve upon the legislature,

The courts are created to enforce the law, and not to legislate.

What is herein said in no way conflicts with the decision in *Smith v. Jordan,* 211 Mass. 269, 97 N. E. 761, or that of *Van Blaricom v. Dodgson,* 220 N. Y. 111, 115 N. E. 443, L. R. A. 1917 F, 363, cited and quoted from in the decision in the former case, contained in 177 Wis. 455, 188 N. W. 627.

We have repeatedly held, and such holding is in harmony with the decisions in foreign jurisdictions, that where the appellate court under the facts in the case has determined the law, such law will be the law of the case, right or wrong, upon a retrial, where the evidence therein is substantially identical with that adduced on the first trial.

Before the present action was brought on for retrial in the court below, defendants' counsel moved the court for a dismissal, for the reason that the plaintiff failed to bring the same on for trial within one year after the reversal upon appeal. This motion was based upon sec. 274.36 of the Statutes, which reads as follows:

"In every case in error or on appeal in which the supreme court shall order a new trial or further proceedings in the court below, the record shall be transmitted to such court and proceeding had thereon within one year from the date of such order in the supreme court, or in default thereof the action shall be dismissed, unless, upon good cause shown, the court shall otherwise order. It shall be the duty of the losing party in any action or proceeding when a judgment or order in his favor in the court below is reversed by the supreme court on the appeal of the opposing party to pay the clerk's fees on such reversal, procure the record in said cause to be remitted to the trial court and bring the cause to trial within one year after such reversal, unless the same be continued for cause, and if he fail so to do, his action shall be dismissed."

The clerk's fees were paid, the record was promptly trans-

mitted to the lower court, and notice thereof served on defendants' attorney; notice of trial and note of issue were also promptly served. The former trial was presided over by Judge QUINLAN. Timely application was made to the court for the trial of the action on several occasions, but the calendar judge suggested that inasmuch as the former trial had been conducted by Judge QUINLAN he would be the proper person to sit at the trial. It also appeared that as early as May 24, 1923, plaintiff's counsel wrote to Judge QUINLAN requesting him to come to Milwaukee to try the case; that on a number of occasions they had a personal interview with Judge QUINLAN in which they attempted to induce him to come to Milwaukee and to try the case, and were assured that he would come at his very earliest opportunity; that on a number of occasions plaintiff's counsel had made preparations for the trial at considerable expense, all without avail. Both counsel seemed to be in harmony with the idea that the cause should be tried before Judge QUINLAN. After the decision on the former appeal, the liability company in which the defendant *Henry Goelzer* was insured went into the hands of the insurance commissioner for liquidation, and thereafter, according to the affidavits submitted in opposition to the motion, defendants' counsel expressed the desire to have the plaintiff's claim paid out of insurance moneys, and negotiations looking toward a settlement were discussed. Under the showing thus made, we think the ruling of the court denying defendants' motion was fully justified, both because proper cause had been shown and because the defendants by their acts waived their right. *State ex rel. Forrestal v. Eschweiler,* 158 Wis. 25, 147 N. W. 1008; *Parkes v. Lindenmann,* 161 Wis. 101, 151 N. W. 787; *State ex rel. Milwaukee v. Circuit Court,* 163 Wis. 445, 158 N. W. 92; *Lamb v. Shoemaker,* 185 Wis. 323, 200 N. W. 379.

Defendants' counsel assign as error the inclusion of the

interest upon the amount of the verdict for damages, in the costs, from March 18, 1921, the date when the verdict on the first trial was returned.   Sec. 271.05 of the Statutes reads:

"When the judgment is for the recovery of money, interest from the time of the verdict or report until judgment is finally entered shall be computed by the clerk and added to the costs of the party entitled thereto."

The action is one in tort; therefore the damages are not liquidated until they are determined.   No question of damages was involved upon either the second trial or on the appeal from the judgment entered thereon.   Naturally, under the decision on the former appeal, if the verdict had been favorable to the defendants, the jury's answer on the subject of damages would have been of no avail to the plaintiff.   When, however, the jury assessed damages in the sum of $2,500 on the 18th day of March, 1921, such damages became liquidated, and under the language of the statute and its spirit, interest must be computed from that date.   *First Wis. Trust Co. v. Schmidt,* 173 Wis. 477, 180 N. W. 832.

The court, among other things, instructed the jury as follows:

"(1) The words 'request' and 'benefit,' as used in the question submitted to you, are not to be given a narrow or limited meaning.

"(2) A request is the expression of one's desire to another person that he should do or give something; the expression of desire to some person for something to be granted or done.

"(3) A request may be express or implied.

"(4) An express request may, and usually does, occur by one person asking another person to do or give something; but one can make a request without directly asking that the desired thing be done or undertaken.   If one person expresses a desire to another person that the latter do or undertake to do something, such as the trip in question,

that would be a request, although there may be no direct question put whereby the one formally asks the other to do or undertake the matter in hand. An express request may also take the form of an answer to a question; for instance, if one person asks another whether the former shall do a certain thing, and the latter answers in the affirmative, that would amount to a request or the expression of the latter's desire that the thing be done. Again, an express request may take the form of a command or direction from one in authority addressed to another who is bound to obey the command or heed the direction given.

"(5) One may express his desire, amounting to an implied request, without saying anything. For instance, if one knowingly consents to a stranger performing valuable services for him, his conduct amounts to a request that the services be rendered, and the law will imply a promise to pay for such services.

"(6) The word 'benefit,' in the question submitted to you, does not necessarily mean a pecuniary profit or monetary gain. It includes any other helpful result or advantage attained or sought by the person for whom the thing is done or undertaken. It may consist of an advantageous or helpful result to a person whereby he himself escapes or avoids the doing of a thing which he desires to have done.

"(7) You are instructed that if you believe from a fair preponderance of all the credible evidence in the case that the defendant *Henry Goelzer* expressed to his son Elton a desire that the latter undertake the trip in question and that the undertaking of the trip would result in some help or advantage to the father, then the trip was undertaken at the request of the father and for his benefit, and you should answer the question 'Yes.' But if you do not so believe, you should answer the question 'No.'"

These instructions were duly excepted to by defendants' counsel, and are relied upon as constituting prejudicial error. Upon the whole, we are of the opinion that the definitions contained in the instructions, both as to an express and an implied request, are in conformity with the usual acceptation of those terms, and that the illustrations are apt and eluci-

dating, excepting only that the instruction contained in paragraph (5) was unnecessary and not applicable to the case. This instruction, however, if error, cannot be deemed prejudicial, for the jury was in possession of all the facts and could readily determine that a situation such as was involved in the instructions in this paragraph had no application to the case at bar.

From the foregoing we conclude that the judgment of the lower court must be affirmed.

*By the Court.*—Judgment affirmed.