SALTZBERG, Respondent, vs. TAX, Appellant.

*October 17, 1924—January 13, 1925.*

*Automobiles: Collisions with pedestrians: Negligence: Contributory negligence: Questions for jury: Appeal: Waiver of objections: Improper remarks before jury.*

1. Conflicting evidence in the trial of consolidated cases—one brought by a wife who was injured in an automobile accident, and one brought by her husband—is *held* to present jury questions both as to the negligence of the defendant in regard to the speed at which he drove his automobile across a street intersection, and as to the contributory negligence of the plaintiff wife in crossing the street. p. 377.
2. A new trial was properly denied, when requested by the defendant because during the impaneling of the jury plaintiffs' counsel asked whether they were officers in any automobile insurance company and one juror volunteered that defendant's counsel was the attorney for his insurance company, where there was no objection at the time and the question is only raised by affidavit on motion for a new trial. p. 379.
3. The record discloses objections by way of recital as to what had taken place during argument to the jury, but does not contain certain alleged improper remarks of plaintiffs' counsel, who denied that he made them. *Held,* that no decision as to whether the remarks transgressed the rule is necessary, as, although no ruling was requested, the. trial court stated the law correctly and it is not certain that the remarks were made. p. 380.

APPEALS from judgments of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Affirmed.*

These cases grew out of an automobile accident, in which a married woman, hereinafter called the plaintiff, was injured. Her action for damages and that of her husband were tried together.

The plaintiff, a woman fifty-eight years old, was struck by an automobile driven by the defendant, between 7 and 8 o'clock in the evening of the 23d of September, 1920, at the southeast corner of the intersection of Walnut street and Sixth street in the city of Milwaukee, when the sky

was clear and she could see quite a long way. The plaintiff testified that she was returning home from a visit to her sister and was going south on the east side of Sixth street, which runs north and south; that she reached Walnut street, which runs east and west, and looked both to the east and to the west and that she saw people on the street but no automobiles or street cars; that she crossed the street to the southeast corner of the intersection and that near the corner she was struck by the automobile driven by the defendant, having had no realization of its presence until it struck her. The witnesses for the plaintiff were one Albert Leviant, who was standing about twenty-five feet west of the southwest corner of the intersection waiting for an eastbound car on Walnut, and Henry Nedbeck, who was riding a bicycle and arrived on the scene of the accident a moment after it took place. Leviant testified that he noticed a woman, who he said was the plaintiff, on the northeast corner of the intersection a few moments before the accident and that he saw her coming across the street towards the southeast corner of the intersection; that an automobile passed him, going east on Walnut, about this time, at a speed of from fifteen to twenty miles per hour; that as he had been a conductor on the electric lines in Milwaukee he was able to judge the speed of a car fairly well; that he supposed that the car and the woman collided, but that he could not say how it happened; that he heard a scream and that the car stopped very quickly and with the rear part of the car three or four feet past the woman, and that he hurried over and assisted in taking her to the hospital; that he saw a Milwaukee Northern street car standing on Sixth street south of Walnut after the accident, but that he had not noticed it before and did not see a car going east on Walnut just before the automobile passed him; that there were lights in the drug store on the corner, but that he did not remember any lights on the automobile. Henry Nedbeck testified that he heard a scream, and, leaving his bicycle

at the church on the northeast corner of the intersection, he hurried over to the scene of the accident, arriving there as the plaintiff was being picked up from the street; that he did not see any lights and there were none on the automobile, but that when the car started up there were lights; that he could not say whether there were dimmers on or not, but that he was sure that lights were turned on after the accident, for it was dark around the automobile, and after the plaintiff was put into the automobile some one turned on the lights; that he was excited and did not notice any street cars.

The defendant testified that he was driving down Walnut in an easterly direction and that he hesitated about crossing Sixth street because a Milwaukee Northern street car was approaching Walnut traveling north on Sixth street; that the street car ahead of him on Walnut started across the intersection and that he followed about twenty feet behind it and at a speed of from ten to twelve miles per hour; that, although he kept a careful lookout, he did not see the woman until the car was about to strike her; that his lights were on at the time and were very bright. The defendant's wife corroborated him in parts of his testimony, but said she did not know much about the accident. Herman Bub, a motorman of the Milwaukee Northern lines, testified that as he was bringing his street car to Walnut street, going north on Sixth street at the time, a passenger said, "Look, there's a woman walking across;" that he saw the automobile of the defendant pass in front of his street car and that all of the lights were lit on it; that he saw the woman strike the right front fender and fall to the ground; that there was a Milwaukee Electric Railway & Light Company street car which also passed in front of his street car, and that the defendant's automobile followed it across the intersection at a distance of about fifteen feet; that the automobile was traveling at the rate of ten miles an hour; that the plaintiff was facing northwest at the moment of the accident. Fred

Struck, a driver for the American Express Company, who was standing on the platform of the Milwaukee Northern street car with Herman Bub, testified that he saw a lady step off the southeast corner of the intersection and start "kittycorner" across the street crossing; that a street car was going east on Walnut and that an automobile was following it; that the automobile struck the woman as she was going in a northwesterly direction and while about seven feet from the curb; that the automobile was traveling about ten miles an hour and that it had bright lights; that the evening was clear and the intersection was well lighted; that the woman struck the car about the middle of the right front fender and fell to the ground.

The jury found that the defendant was guilty of negligence with respect to both the speed of the car which he was driving and also as to the lookout which he was keeping and that this negligence was the proximate cause of the injury to the plaintiff; that the plaintiff had not been guilty of any contributory negligence, and that the total damages suffered by the plaintiff and her husband as a result of the accident amounted to $3,750.

*Dale C. Shockley* of Milwaukee, for the appellant.

For the respondents there was a brief by *Padway, Skolnik & Winnecour,* attorneys, and *Joseph A. Padway,* of counsel, all of Milwaukee, and oral argument by *Joseph A. Padway.*

The following opinion was filed November 11, 1924:

JONES, J. In his contention that there was no negligence on the part of the defendant and that the plaintiff was guilty of contributory negligence, the defendant's counsel relies on the following cases: *Feyrer v. Durbrow,* 172 Wis. 71, 178 N. W. 306; *Brickell v. Trecker,* 176 Wis. 557, 186 N. W. 593; *Hirschberg v. Milwaukee E. R. & L. Co.* 179 Wis. 175, 190 N. W. 829; *Blazic v. Franzwa,* 179 Wis. 260, 191 N. W. 572; *Koperski v. Hoeft,* 179 Wis. 281, 191

N. W. 571.  In the first of these cases there was no evidence of excessive speed except the estimate of the plaintiff, a boy having no experience in judging as to speed, when he was only from two to seven feet away from the car as he first saw it, and when the physical facts conclusively established that there was no excessive speed and it was apparent that the boy could see the automobile as soon as the driver could see the boy in the street.  It was held that if he was not negligent in failing to see the automobile, the driver was not negligent in failing to discover him.  In the second case the plaintiff was crossing the intersection and was struck by a car coming from the west.  She made no claim that at any time she looked to the west to ascertain whether automobiles or other vehicles were approaching from that direction.  She and the driver discovered each other at about the same time, and it was a physical certainty that if she had but glanced in the direction from which she was required to anticipate approaching traffic after having crossed the middle of the street, she would have observed the automobile in time to have avoided the accident.  The rule announced in the *Feyrer Case* was followed, and it was said: "Pedestrians cannot heedlessly cross busy city streets where automobiles and other traffic pass to and fro, without taking the least precaution to discover and avoid approaching vehicles."  In both of these cases the accident occurred in the daytime.  In the *Hirschberg Case* the circuit court ordered judgment for the defendant on the ground of contributory negligence.  In that case, when the plaintiff last looked for an approaching street car she was distant from the tracks not more than seven feet.  It was held by this court that although there was a snow storm at the time, so large an object as an approaching street car must have been within her vision if she had looked.  In the *Blazic Case* it was held that on the undisputed testimony there was no negligence on the part of the defendant, and the question of contributory negligence was not decided.

It seems to us very clear that the question of the defendant's negligence was for the jury. Although the greater number of witnesses estimated the speed of the automobile at from ten to twelve miles per hour, the testimony of Leviant cannot be disregarded in this connection. He had the requisite experience and no witness had a better opportunity than he to observe the speed of the automobile. The statute in force at the time of the accident, in the case at bar, forbade the operation of automobiles within the corporate limits of any city at a speed exceeding fifteen miles per hour and required that at the intersection of streets the speed should be reduced to such a rate as would tend to avoid danger of accident. Sec. 1636—49, Stats. 1919. The question of contributory negligence presents greater difficulty. We consider, however, that the cases cited by the defendant's counsel are distinguishable. In the first two cases above cited, and those relied on most by the defendant's counsel, the collision took place in the daytime, and in them there was practically no conflict in the testimony. In the *Blazic Case,* as already stated, the question of contributory negligence was not decided. In the *Koperski Case* it was held that there was no evidence from which any inference of negligence on the part of the defendant could be drawn. Now we have a case in which the testimony is full of conflict. None of the witnesses testified that a street car was passing east, except the plaintiff, his wife, and the two witnesses on the north-bound car, while Leviant, who was waiting for such a car, swore he neither saw nor heard it. The time of the arrival of this north-bound car was disputed by Leviant, who testified that it came to the intersection about a minute after the accident. Moreover, the testimony of the two witnesses was materially different. Struck located the plaintiff out in the street seven or eight feet and said that she was going in a northwesterly direction from the curb. Bub, the other witness, said that he saw no woman leaving the curb. He said he saw her for the first

time when she and the car came together, and that she was falling when he saw her. There was a direct conflict in the testimony as to the distance traveled by the car after the accident. The defendant testified that he did not know how far ahead the lights on his car would show, but he "presumed about a hundred feet or so." The statute then in force required as to the minimum that the headlights should be such as "to enable the driver to clearly distinguish a person, vehicle or other substantial object two hundred feet ahead." Sec. 1636—52a. We have pointed out perhaps in unnecessary detail these conflicts in the evidence to show the material differences between this case and those relied on by the defendant's counsel. Some of those decisions have been often cited and affirmed by us and we regard them as quite consistent with that which is made in this case. Counsel for the defendant earnestly urges that the plaintiff must have seen the approaching automobile in time to avoid the accident, if she looked. Her testimony that she did look carefully on her way across the street, both before and after passing the center, is unequivocal. There is no testimony as to the distance at which an unlighted automobile would be visible under the existing circumstances. It is to be assumed that the jury in the civil court took into consideration the degree of care used by the plaintiff and the defendant, including conflicts in the evidence and the credibility of the witnesses. They evidently concluded that the defendant was driving his car at an excessive rate of speed across the intersection, and that although the plaintiff was watchful she did not see the danger until it was too late to escape. Two able judges in their decisions analyzed the testimony and approved the verdict. The language used by Mr. Justice Rosenberry in a recent case seems directly in point:

"The circumstances are such that we cannot say that 'the minds of reasonable men can come to but one conclusion upon the law, facts, and circumstances in this case.' It must be borne in mind that we are not dealing here with the

great weight or preponderance of the evidence, but with the question of whether or not the contributory negligence of Mrs. Geffert is conclusively established as a matter of law." *Geffert v. Kayser,* 179 Wis. 571, 192 N. W. 26.

It is unnecessary to cite authority as to the weight to be given to the findings of the jury and the decisions of the trial court on questions such as are here presented. In our opinion the following cases are more applicable to the facts of this case than those relied on by the defendant's counsel and justify our conclusion that the issues involved here were for the jury: *White v. Kane,* 179 Wis. 478, 192 N. W. 57; *Moody v. Milwaukee E. R. & L. Co.* 173 Wis. 65, 180 N. W. 266; *Shortle v. Sheill,* 172 Wis. 53, 178 N. W. 304; *Grimes v. Snell,* 174 Wis. 557, 183 N. W. 895; *Cunnien v. Superior I. W. Co.* 175 Wis. 172, 184 N. W. 767; *Enea v. Pfister,* 180 Wis. 329, 192 N. W. 1018; *Callies v. Reliance L. Co.* 182 Wis. 53, 195 N. W. 975; *Shanley v. Monarch C. Co.* 182 Wis. 231, 196 N. W. 227.

Counsel for the defendant argues that a new trial should have been granted because, during the impaneling of the jury, jurors were questioned by the plaintiff's counsel as to whether they were officers in any automobile · insurance company. One juror volunteered a reply that the defendant's counsel was the attorney for his insurance company. It does not appear that any objection was made at the time, and the question is only raised by affidavit on the motion for new trial. We must hold that even if there was error it was waived.

It is also urged that during the argument to the jury the plaintiff's counsel stated that the fact that the jury might answer the last question with reference to damages did not mean that the plaintiff would recover that amount, and that it was very important that the other questions be carefully noted before answering them. The plaintiff's counsel denied that he made such a statement. So far as we can determine from the record, the objections were made by way of recital

of what had taken place. No ruling of the court was asked or made except that the court told the jury that no question was more important than any other. It is unnecessary to decide whether the remarks of counsel on this subject transgressed the rule, since, although no ruling was asked by counsel, the court stated the rule correctly and it was not certain that the remarks complained of were made. *Heucke v. Milwaukee City R. Co.* 69 Wis. 401, 34 N. W. 243; *Jakopac v. Newport M. Co.* 153 Wis. 176, 140 N. W. 1060.

In the brief of plaintiff's counsel there is a long argument in which it is claimed that it is proper to prove, in cases of this kind, that the defendants are insured against loss. It is also argued at great length that it is proper for counsel to disclose the legal effect of their answers upon a special verdict, to the jury, with respect to the effect upon the rights of the parties. Although we have had the benefit of the personal opinion of counsel on these subjects, he has cited no direct authority to sustain his views and he concedes that they are contrary to the well settled rules in this state. We see no reason for a discussion of these subjects by us in this case or for departing from the rules often declared by this court.

*By the Court.*—Judgments affirmed.

The appellant moved for a rehearing.

In support of the motion there was a brief by *Dale C. Shockley,* attorney, and *P. H. Paulsen,* of counsel, both of Milwaukee.

In opposition thereto there was a brief by *Padway, Skolnik & Winnecour,* attorneys, and *Joseph A. Padway,* of counsel, all of Milwaukee.

The motion was denied, with $25 costs, on January 13, 1925.