## HINCHMAN, ADMINISTRATOR, v. FRY.

[No. 11,982. Filed April 28, 1925. Rehearing denied January 12, 1926. Transfer denied March 29, 1929.]

*William J. Henley, Charles Tindall* and *Donald L. Smith,* for appellant.

*Douglas Morris,* for appellee.

McMahan, J.—Appellee filed a claim against her father's estate for $500 which was received by the decedent as a trustee for appellee. A trial by jury resulted in a verdict and allowance for appellee.

Appellant contends the evidence is not sufficient to sustain the verdict and that the court erred in giving and refusing to give certain instructions.

John Gifford, grandfather of appellee, died testate in 1871. He bequeathed $1,000 to appellant's decedent, Sanford Hinchman, in trust for appellee and a sister. This legacy was paid to the decedent February 28, 1872. Appellee was born in July, 1868, and lived with her father until she became grown. She worked at the millinery trade for a period of about three years before she married, which was in February, 1892. Her mother died many years ago, the date of which is not disclosed, although the inference is that she died prior to 1870. Sanford Hinchman married a second time, in 1870, and died in 1922. About six years before his death, he sold his farm for $19,200 and gave each of his six children by the second marriage $3,000. There is no evidence to show what he did with the $500 which he held in trust for appellee. No guardian was ever appointed for appellee, and no court ever assumed jurisdiction of the trust fund.

There is evidence that in the spring of 1892 the decedent gave appellee the sum of $500, at which time appellee gave her father a receipt for $500. There is also evidence that in 1906 appellee asked her father for the money that was due her from her grandfather, and that

her father at that time said he did not have it, but that he would settle it sometime. There is also evidence that in 1912 appellee asked her father for the money; that he said he did not have it then, but was worth it and would see that appellee got it; that appellee asked him to give her a note for it, and that he said his word was good and she would get the money.

Appellee contends that her father was liable to account to her for interest on the money at the rate of six percent per annum from the time he received it. The court instructed the jury in accordance with this contention. This was error. The burden of proving liability for interest on trust funds is upon him who alleges the right. *In re People's Trust Co.* (1915), 169 App. Div. 699, 155 N. Y. 639. There is nothing in the will of John Gifford indicating that it was the intention of the testator that appellee's father should invest the money which was given him as trustee for appellee. In so far as that instrument is concerned, he was not required to do anything more than hold the money as trustee, and pay it to appellee at the proper time. He was not accountable to her for any interest on the funds, and, unless he converted it to his own use, loaned it out at interest or otherwise invested it, his estate should not be chargeable with interest. If he deposited it in a bank, loaned it or otherwise invested it, he would be chargeable with the interest or income received by him. If he deposited it in a bank in his own name, commingling it with his own funds, and used it as his own, in a suit for an accounting, he would have been liable to respond to appellee for interest at the legal rate during the time he so used it. But there is no allegation in appellee's claim as filed, nor is there any evidence, that the decedent converted the money to his own use, or that it was loaned or deposited in a bank so as to earn

interest, unless the evidence that appellee in recent years asked her father for the money and his statements to her be considered as evidence of a conversion. In the absence of some proof on this subject, the decedent was not liable for interest. For a discussion of the liability of a trustee for interest in trust funds, see *St. Paul Trust Co.* v. *Strong* (1901), 85 Minn. 1, 88 N. W. 256; *White* v. *Sherman* (1897), 168 Ill. 589, 48 N. E. 128, 61 Am. St. 132; *In re Gehring's Estate* (1923), 179 Wis. 589, 192 N. W. 26; *Clarke* v. *Gilmore* (1914), 163 App. Div. 845, 147 N. Y. Supp. 129; *Society* v. *Pelham* (1879), 58 N. H. 566; *Knowlton* v. *Bradley* (1845), 17 N. H. 458, 43 Am. Dec. 609; *Coffin* v. *Bramlitt* (1868), 42 Miss. 194, 208, 97 Am. Dec. 449; *Wagner* v. *Coen* (1895), 41 W. Va. 351, 23 S. E. 735; *Davis* v. *Swedish-Am. Nat. Bank* (1899), 78 Minn. 408, 80 N. W. 953, 81 N. W. 210, 79 Am. St. 400.

Appellee, in support of her contention that she is entitled to interest on the trust fund, cites *Cowan* v. *Henika* (1897), 19 Ind. App. 40, 48 N. E. 809, where the court said: "One of the most important of the duties of a trustee is to invest the trust fund in such manner that it shall be safe and yield a reasonable rate of income to the *cestui que trust*, and if the trust estate is money the trustee is chargeable with interest."

*Stumph* v. *Pfeiffer* (1877), 58 Ind. 472, and *State, ex rel.*, v. *Sanders* (1878), 62 Ind. 562, 30 Am. Rep. 203, are cited by the court in support of the above statement. Those cases, however, relate to the duties of guardians, where the statute defining such duties expressly requires the guardian to manage the estate for the best interest of the wards. The facts in the Cowan case are not fully set out in the opinion, but if the evidence in that case disclosed that the trustee had converted the money to his own use, the statement concerning interest was a correct statement of the law applicable to facts.

In *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636, 66 N. E. 51, 67 N. E. 441, where the trustee used the money by investing it in real estate for his own benefit, the court, after stating that it would be wholly inequitable not to charge him with the legal rate of interest, said: "As a general rule, in the absence of anything to the contrary, the question of requiring a trustee to pay interest on trust funds is one which must depend upon the facts and circumstances in each particular case; and where good conscience requires that the trustee be charged with interest, the payment thereof ought to be exacted." And in *Gilbert* v. *Welsch* (1881), 75 Ind. 557, 561, the court said: "The rule, which requires that trust funds be kept separate from individual moneys or investments, can not be relaxed with safety. It is well settled, that, if a trustee deposit the trust fund in bank, in his own name, he will be charged with interest upon it, and, if a loss occur, through failure of the bank, or otherwise, he must suffer it."

In *Lewis* v. *Hershey* (1910), 45 Ind. App. 104, 90 N. E. 332, the appellant filed a claim against her grandfather's estate to recover a fund which the decedent had held in trust. The court, after reviewing the evidence, quoted from *Stanley's Estate* v. *Pence, supra,* to the effect that the question of requiring a trustee to pay interest on trust funds depended upon the facts in each particular case, and added: "In this case it is shown the claimant grew up to womanhood in her grandfather's home, as a member of his family. It is therefore equitable and just that this estate should be liable for interest from the date of her marriage only, the time she ceased to be a member of his family."

Appellant contends that, in accordance with the statement of the court in the case last cited, his decedent was not liable for interest, as he paid the whole of the trust fund to her upon her marriage.

We cannot concur in this contention. The statement of the court that it was "equitable and just that this estate should be liable for interest from the date of her marriage only," may have been a proper statement of a principle of law. It indicated the idea of the court as to what would be "equitable and just" under the facts in that particular case. In an action against a trustee to recover trust funds, as in a suit for an accounting, the question as to whether the trustee shall be required to pay or be charged with interest, and the amount with which he shall. be charged, depends upon the instrument creating the trust and upon the equities of each particular case. The violation of the trust in one case may be so flagrant as to justify the court in allowing interest compounded annually. Under other facts, simple interest at the highest rate per annum would be proper, while in other cases, a lower rate would be more equitable and just. In a case where the trustee was under no obligation to loan or invest the funds, but was only required to hold and pay them to the proper party at a certain time, and the funds have been so paid, and where the trustee did not convert the funds to his own use or derive any profit from them, he is not to be charged with any interest.

We cannot know what facts may be developed on a retrial of this cause, and refrain from expressing what might be equitable and just. If the cause is to be tried by a jury, it will be for the jury, under the instructions of the court, to determine whether appellee is entitled to interest on the fund, and, if so, how much.

If the evidence should show that the trustee converted the funds to his own use, it might be proper to charge him with interest at the legal rate. If he deposited it in a bank or loaned it, it would seem equitable to charge him with the interest he received. If he deposited it in a bank in his name as trustee and kept it on deposit in

that manner and received no interest on it, he should not, under the authorities, be charged with interest. Section 7952 Burns 1914, Acts 1879 p. 43, §3, concerning interest on instruments in writing, accounts stated, money had and received for the use of another and retained without his consent, is not controlling as to the amount of interest a trustee shall be required to pay on an accounting or on a claim filed against his estate.

Judgment reversed, with directions to sustain appellant's motion for a new trial, to grant appellee leave, if desired, to amend her claim and for further proceedings consistent with this opinion.