FIRST NATIONAL BANK OF SEYMOUR ET AL. *v.*
RUST ET AL.

[No. 25,966. Filed April 7, 1933. Rehearing denied November 23, 1933.]

*Montgomery & Montgomery, J. Ross Robertson,* and *Thomas M. Honan,* for appellants.

*Edward P. Elsner* and *Thomas H. Branaman,* for appellees.

HUGHES, J.—The appellant, The First National Bank of Seymour, Indiana, brought this action against Andrew Rust and Minnie Rust to set aside an alleged fraudulent conveyance of real estate made by Andrew Rust to Minnie Rust. The cause was sent to the Washington Circuit Court on change of venue for trial. All the other appellants were on application made parties and they filed separate cross-complaints against appellees asking to set aside the conveyances as being fraudulent as to them.

The court, at the request of the defendants, made a special finding of the facts, and stated its conclusion of law thereon in favor of appellees and rendered judgment thereon. Each appellant relies for reversal upon alleged error of the court in each of its conclusions of law and in overruling each of appellant's motions for a new trial for the reason that the finding of the court is not sustained by sufficient evidence and because the finding of the court is contrary to law.

The special finding of the facts show that appellees are husband and wife; that they were married September 18, 1898; that they are and have been for many years residents of Jackson county; that on October 17, 1914, appellee, Minnie Rust, was the owner in her own name and right and as her sole and separate property of 60 acres of unincumbered real estate situated in Jackson county, Indiana, which she had so owned since September 14, 1906; that on October 7, 1914, she sold said real estate for $15,000; that on said date Andrew Rust was the owner of certain real estate and sold the same for $8,000; the real estate of Minnie Rust and Andrew Rust was conveyed by the same deed; that prior to the time of the conveyance of these lands and at the time of said conveyance, it was agreed by and between the said Andrew Rust and Minnie Rust that in the sale of her said lands, her separate property was to be preserved, and that the consideration paid for the lands owned by her, to wit: $15,000, was to be applied on the purchase of 217½ acres, part of the real estate here involved, and that the title thereto was to be taken, and said real estate conveyed to Minnie Rust and Andrew Rust; that through neglect or inadvertence the conveyance thereto was made to Andrew Rust and the title taken by Andrew Rust; that the conveyance of said real estate to said Andrew Rust as his sole and separate property was wholly unknown to Minnie Rust; that she

did not learn of the conveyance of said real estate to Andrew Rust for several months thereafter; that upon learning of said conveyance the said Minnie Rust objected and remonstrated and said Andrew Rust thereupon agreed to execute conveyances whereby said agreement between him and Minnie Rust would be effectuated and title to said real estate taken and held in the name of Andrew and Minnie Rust; that he never executed said conveyance or did anything to perfect title thereto in said Minnie Rust and himself; that thereafter on different occasions covering a long period of years the said Minnie Rust requested the said Andrew Rust that the title to said real estate be taken in herself and said Andrew Rust and on each occasion the said Andrew Rust consented and agreed so to do but never did; that said Minnie Rust did not make a gift of the monies derived from the sale of her lands to said Andrew Rust but always desired and intended to preserve the same to her own use and benefit; that said monies or the use and benefit thereto was never received or appropriated by said Andrew Rust as a gift from his wife, that the application of the money derived from the sale of her land upon the purchase price of the lands purchased was made, had and done under and upon the distinct and express agreement that the title to said real estate so purchased was to be taken in, and the said land conveyed to the said Minnie Rust and Andrew Rust and not otherwise.

That the title to said real estate remained in the name of Andrew Rust as his sole and separate property until May 2, 1927, and during the whole of which time from the date of the purchase to May 2, 1927, the said Andrew Rust used said lands as his sole and separate property and received the whole of the rents, profits, income, and benefits therefrom to his own use and benefit and the said Minnie Rust received no part thereof as her own.

That afterwards, on or about April 30, 1927, the said Andrew Rust agreed with Minnie Rust to convey to her the said real estate so purchased containing 217½ acres and 40.90 acres in addition subject to a mortgage of $5,531.35 in favor of Phoebe E. Robertson, in payment, satisfaction, and settlement of his said debt and obligation to said Minnie Rust in the principal sum of $15,000, together with 6 per cent interest for 12 years and which said conveyance of said real estate subject to said mortgage, said Minnie Rust agreed to accept in payment and satisfaction of her claim against said Andrew Rust; that in pursuance of said agreement the said Andrew Rust did on May 2, 1927, execute and deliver to the said Minnie Rust his deed of conveyance to said real estate subject to said mortgage; that said conveyance was executed and delivered by Andrew Rust and accepted by Minnie Rust in good faith, for an adequate consideration in full payment and satisfaction of the said bona fide debt and obligation then due and owing from the said Andrew Rust to said Minnie Rust; that at the time of said conveyance the said Andrew Rust was justly indebted to Minnie Rust in the sum of $25,800; that at the time of the conveyance the fair cash value of the 217½ acre tract was $115 per acre, and at said time the fair cash value of the 40.90 acre tract was $125 per acre and a fair cash value of all of said land conveyed by said Andrew Rust to Minnie Rust was $30,125; that said real estate at the time of said conveyance was subject to a mortgage in favor of Phoebe E. Robertson in the sum of $5,531.25; that at the time of the execution and delivery of said deed of conveyance to said Minnie Rust by her husband, Andrew Rust, the said Minnie Rust did not have any knowledge of the existence of the debts and obligations of her said husband to the plaintiff, The First National Bank of Seymour, Indiana, or the cross-complainants or any of them; that said deed of

conveyance was not accepted by the said Minnie Rust with the knowledge, purpose, or intent of said Minnie Rust, to cheat, hinder, or delay the creditors of her husband Andrew Rust, or to aid her said husband in so doing, or with the knowledge on the part of said Minnie Rust of any purpose or intent on the part of said Andrew Rust to cheat, hinder, or delay or defraud the creditors of said Andrew Rust in the collection of the sum owing to them, or either of them.

That after said defendant Minnie Rust had knowledge that the real estate so purchased had been conveyed to said Andrew Rust and the title thereto taken in him alone, she had no knowledge of the incurring of any indebtedness to plaintiff or cross-complainants, or others, upon the faith or strength of his title to said real estate or upon reliance thereof; that she did not voluntarily suffer, permit, or allow said title to remain in said Andrew Rust but such title continued and remained in his name alone against her will and consent and that she made all reasonable effort to procure the transfer of said title to herself and said Andrew Rust as husband and wife; that said Minnie Rust was not guilty of any conduct to lead or induce plaintiff or cross-complainants to become creditors of defendant Andrew Rust, in reliance upon his ownership of said real estate.

Upon the special facts found, the court found the law to be with the defendants.

The appellants earnestly insist that there is only one error relied on for reversal and that is the overruling of the several motions of appellants for a new trial on the ground that the finding of the court was not sustained by sufficient evidence and was contrary to law. In the face of this contention, however, the appellants set out in their brief as errors relied upon for reversal that the Washington Circuit Court erred in each of its conclusions of law as applied to all of the appellants and

on page 86 of appellant's brief, they say: "The appellants have separately and jointly and severally assigned similar errors, and in support of their several exceptions to each of the conclusions of law and in support of the alleged errors of the court in overruling their respective motions for a new trial, on the grounds that the decisions of the court is not sustained by sufficient evidence and is contrary to law, they jointly and severally submit the following points and authorities." It is true that appellants say in their brief that they "base their appeal largely upon the errors of the court in overruling their motion for a new trial."

It is undisputed and is admitted by appellants in their brief that Andrew Rust used $15,000 of his wife's money towards paying the purchase price of a farm consisting of 217½ acres; that the title by mistake or otherwise was taken in the name of Andrew Rust. And the evidence clearly shows that by agreement and understanding between Andrew Rust and Minnie Rust, the title was to have been taken in the name of both; that it was several months before Minnie Rust learned that the title had been taken in the name of Andrew Rust and not in the name of both and the evidence further shows that from the time Minnie Rust learned that the title was in the name of Andrew Rust alone she made objection and complaints to him and demanded that her interests be protected and preserved and she continued to complain and remonstrate until about April 27, 1927, and during all of this time Andrew Rust promised and agreed to comply with her request but failed to do so.

This constituted a direct breach of a trust. As is said in Pomeroy's Equity Juris. (4th Ed.), vol. III, Secs. 1079 and 1080: "It is well settled that every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or

done through negligence, or arising through mere over-sight or forgetfulness, is a breach of a trust."

Under the facts in this case it can not be seriously contended that there was not a breach of a trust committed by Andrew Rust when contrary to the agreement and understanding between himself and his wife, Minnie Rust, he took title to the land in question in his own name when $15,000 of her own money was part of the purchase price of said farm. The court in the case of *Scrogin* v. *Dickison* (1914), 57 Ind. App. 353, 107 N. E. 86, by Lairy, J., said: "The presumption is that the money and other property of the wife constituting her separate estate continues to belong to her as her separate property even after the husband has taken possession of the same and has assumed its management and control. In such cases the law presumes that he holds in good faith for her use, and benefit as a trustee, and he must account for the same to her or to her estate, unless he is able to overcome such presumption by proof of facts showing a gift to him or that it came into possession through some transaction which was in all respects fair and equitable."

In the case of *Kane* v. *Bloodgood* (1823), 11 Am. Dec. 417, the court said, "The word trust is often used in a very broad and comprehensive sense. And where one receives the money of an other to be applied to a particular purpose and fails to apply it for the particular purpose, it is the law that he may be sued either at law for money had and received, or in equity as a trustee, for breach of his trust." The court, in the case of *Comer* v. *Hayworth* (1902), 30 Ind. App. 144, 65 N. E. 595, says: "If the husband took the wife's property with her consent, unless the facts and circumstances show an agreement or intention on her part that he shall have it as a gift he will be presumed to have taken it as

her agent or trustee. In such case she may declare against him not for conversion, but for money had and received to her use."

So in the case at bar there can be no question but that Andrew Rust held the land in question, at least for the amount of money that Minnie Rust put into the purchase price, in trust for her; the money was to be applied for a particular purpose, to wit: to purchase the land and put the title in the name of Andrew Rust and Minnie Rust. In violation of this purpose the title was put in his name alone and therefore he is a trustee for Minnie Rust and he may be sued, either at law for money had and received, or in equity as a trustee, for a breach of trust.

In the case of *Denny* v. *Denny* (1889), 123 Ind. 240, 23 N. E. 519, it appears that Mary Denny filed a claim against the estate of her husband for money received by him at various times from the estates of his wife's father, brother, and grandmother amounting to about $2,600. All of this was done with the knowledge of the wife, but without any express agreement or understanding at the time the several sums were received concerning its repayment. The testator used the money to pay his personal indebtedness, and to pay for real estate, the title to which he took in his own name and also in the erection of a family residence which the wife was anxious to have erected for the family.

As a conclusion of law the court allowed the claim with interest at 6 per cent from the date on which it was filed against the estate.

The Denny case is different from the one at bar, in that in the Denny case the husband received the money with the knowledge and consent of his wife and he used it without objection on her part as far as the case shows. In the instant case it was without the knowledge and consent of the wife that her husband took title in his

name and after the discovery of the fact she protested and continued to protest until a settlement was made.

In the Denny case the court said: "Where however (as in the present case) the wife never acquired the actual dominion over her money the husband having collected and appropriated it to his own use before it ever came to her possession, the mere fact that she consented that he might collect and receive the money, raises no presumption whatever that she intended to bestow it on her husband. In such a case he becomes her agent, or trustee, and must account unless he affirmatively shows that the intention of his wife was to bestow it upon him."

The facts in the instant case are much stronger than the Denny case and unquestionably shows that Andrew Rust should be held as the agent or trustee of Minnie Rust.

It appears from the evidence that on or about April 30, 1927, Andrew Rust and Minnie Rust reached an agreement to settle and adjust their difficulties as to the amount of money she had put in the purchase price of the land in question. This, under the law, they had a right to do. She had a cause of action against him for money had and received. He agreed to convey to her the 217½ acres together with 40.90 acres subject to a mortgage in the principal sum of $5,531.25 in payment, satisfaction, and settlement of said debt to her in the principal sum of $15,000 and interest at 6 per cent thereon for 12 years and she accepted the proposition of settlement and on May 2, 1927, he executed and delivered a warranty deed conveying said land to her subject to said mortgage.

We have carefully reviewed the evidence in the case. There was some conflict as to the value of the land but the evidence fairly sustains the price put upon it by the parties to the transaction, and it can not be said under

the evidence, that the price is so inadequate that the court would not be justified in letting it stand.

Applying the law, that every person who receives money to be paid to another or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee for a breach of trust, to the evidence in the instant case we hold that the relation of creditor and debtor was created and that the $15,000 was a just debt belonging to Minnie Rust.

The next question presented is that of interest. Is it allowable under the law? The appellants contend that no interest can be allowed and cites the case of King v. King (1899), 24 Ind. App. 598, 57 N. E. 275, to sustain their proposition. In this case the property of the wife, the principal of the fund, passed into the hands of her husband with her consent. There was no agreement to repay the principal, or to pay interest thereon. There was no demand for the repayment of the money, and consequently no refusal. In the case at bar the money was placed with the husband for a specific purpose which was not carried out; it was against the consent of the wife and it was retained over her protest and against her wishes.

The case of King v. King, supra, is more of an authority against the appellants than for them. On the proposition of interest the court said: "If by the finding it appeared that there was an agreement to repay the money with interest, or that appellee had demanded the return of the money, and decedent had refused to pay it, or that the money was taken into decedent's possession without appellee's consent, and retained against her wishes the interest charged might be sustained." The facts in the case at bar falls within the foregoing statement. Here we have a case where the property or money was taken by the husband without the con-

sent of the wife and retained against her wishes over her protests and objections.

The case of *Stanley* v. *Pence* (1902), 160 Ind. 636, 66 N. E. 51, is based upon facts very much like the instant case. In this case the appellee filed a claim against the estate of John H. Stanley for money received by him from the mother of the claimant. The money was held for a long period of time. There was no evidence to prove any express promise to pay interest on the money which he received and on the subject of interest the court said: "There is evidence to show that Stanley actually used the money in the purchase of real estate for himself, thereby converting it to his own use and benefit. Under the circumstances it would be wholly inequitable not to charge him, as trustee, with the legal rate of interest upon the trust funds. As a general rule, in the absence of anything to the contrary, the question of requiring a trustee to pay interest on the trust funds is one which must depend upon the facts and circumstances in each particular case; and where good conscience requires the trustee be charged with interest, the payment thereof ought to be exacted.

"In fact, it may be asserted that the case at bar falls within that clause of the interest statute which provides that: 'on money had and received for the use of another, and retained without his consent interest shall be allowed at the rate of $6.00 a year on $100.00.' Sec. 7045, Burns 1901.

"We conclude that under the facts it was entirely proper and right for the jury to allow the legal rate of interest on the money in question from the date it was received by Stanley, the trustee, and therefore the court did not err in so advising the jury." *Hinchman* v. *Fry* (1925), 89 Ind. App. 79, 147 N. E. 724, 725.

We feel that in this case "good conscience" would

require that Andrew Rust should pay interest on the $15,000 at 6 per cent as found by the court.

The appellants further contend that the appellee, Minnie Rust, is estopped by laches and assert in this brief, on page 287, that, "she is now estopped as against them from asserting her title, on the principle that equity will not permit a wife to clothe her husband with the indicia of ownership to her land while he is obtaining credit on his apparent ownership of such land, then claim the land as her own, free from credit so extended." This statement is not within the facts in this case. She did not, as clearly appears from the evidence, clothe her husband with the indicia of ownership to her land, but on the other hand he took her money, put it in land and took title in his name contrary to her wish, agreement and understanding. And furthermore, there is no evidence to show that she had any knowledge that her husband as obtaining credit on his apparent ownership. It is not shown by the evidence the existence of any circumstances which imposed the duty of Minnie Rust to make known her rights to the appellants, or any of them and this is one of the essential elements of an estoppel.

We do not believe that the essential elements of an estoppel have been shown in the case at bar. *General Realty Co.* v. *Silcox* (1925), 84 Ind. App. 451, 146 N. E. 408; 21 Corpus Juris 1172-1176, Sec. 178 (b).

The lower court found that Andrew Rust was indebted to Minnie Rust in the sum of $25,800, principal and interest, and that the value of the land conveyed to her, by him was $30,125 which was subject to a mortgage of $5,531.25.

We feel that under the evidence and the law, this finding was justified and that the special finding of facts are supported by the evidence, and that the conclusions of law upon the facts found are correct.

Judgment affirmed.